**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **EDISON TOWNSHIP BOARD OF EDUCATION,** | **Civil Action No. 17-53 (JMV)** |
| **Plaintiff,** | |
| **v.** | |
| **F.S. and A.S. o/b/o Z.S.,** | **REPORT & RECOMMENDATION** |
| **Defendants.** | |

**FALK, U.S.M.J.**

This matter is before the Court by way of Plaintiff Edison Township Board of Education ("Plaintiff" or "Edison")'s motion for a stay pending appeal of the November 21, 2016 decision of the Honorable Michael Antoniewicz, A.L.J., in the underlying matter captioned *F.S. and A.S. o/b/o Z.S. v. Edison Township Board of Education*, OAL Docket Nos. EDS 07675-14, 09143-14, and 15019-16. [ECF No. 17.] Full briefing has been submitted.[1] The motion has been referred for a Report and Recommendation. For the reasons stated below, it is respectfully recommended that Plaintiff's motion be **DENIED**.

---

[1] This includes a Sur-Reply and a Sur-Sur-Reply, which have been considered. (*See* ECF Nos. 24, 26.)

### Relevant Background[2]

Z.S. is the 15-year-old son of F.S. and A.S (at times, collectively "Defendants"). He resides within the Edison School District and attended public school in the District from Grade 2 (September 2010) through Grade 5 (June 2013). Z.S. has been deemed eligible for special education and related services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1419, pursuant to the category of Other Health Impaired ("OHI") due, in part, to ADHD.

Following Grade 5, Z.S.'s parents unilaterally removed him from the Edison School District and placed him at the SINAI School in Livingston, New Jersey. Z.S. attended the SINAI School for grades 6 (2013-14), 7 (2014-15), and 8 (2015-16).[3] Z.S.'s move to the SINAI School was precipitated by Edison's alleged failure to appropriately evaluate Z.S.'s needs and provide him with the free appropriate public education ("FAPE") to which he is entitled under the IDEA.

On October 16, 2013, Defendants filed a petition for due process seeking records, an evaluation, an appropriate Individual Education Plan ("IEP"), and reimbursement for and/or continued placement at the SINAI School. Edison filed an Answer in November 2013, denying that a FAPE had not been provided. The initial petition was withdrawn,

---

[2] This section is constructed from the pleadings, briefs, and exhibits submitted. Only necessary background is repeated herein. Citations are omitted.

[3] As of February 2017, Z.S. attends the Collier School in Wickatunk, New Jersey. Edison pays for Z.S.'s placement at the Collier School.

without prejudice, in February 2014.

On April 28, 2014, a second due process petition was filed, requesting the same relief as above. Edison filed an Answer on May 20, 2014, again denying that a FAPE was not provided to Z.S.

On June 11, 2014, Edison offered Defendants an IEP.

On June 25, 2014, Defendants filed a third due process petition, advised that Z.S. would be continuing at the SINAI School, and requested reimbursement for Z.S's prior and continuing placement at SINAI.

In December 2014, the second and third due process petitions were consolidated with the consent of both parties. Administrative proceedings commenced and hearings were held before Administrative Law Judge Michael Antoniewicz (the "ALJ") on eight occasions: October 9, 2015; October 13, 2015; November 18, 2015; November 23, 2015; March 4, 2016; May 23, 2016; July 20, 2016; and August 16, 2016. In total, Edison produced three witnesses[4] and Defendants produced six.[5]

On November 21, 2016, the ALJ issued a 48-page decision in favor of Z.S. finding that Edison failed to provide a FAPE during the 2012-13 through 2015-16 school years,

---

[4] Edison's witnesses were: (1) Mansi Patel, a case manager from the Edison School District; (2) Catherine Rokosz, a special education teacher in the Edison District; and (3) Christopher Conklin, Edison's assistant superintendent.

[5] Defendants (then-Petitioners) witnesses were: (1) Susan Caplan, M. Ed., LDTC., an expert in "special education, special education programming," and as a learning disabilities teacher consultant; (2) Judith Leah Karp, an expert in the field of Special Education and Educational Programming; (3) Gloria Bland Katz, MA, LDT-C, PRSE, an expert in learning consulting; (4) Dr. Karen Wasserman, a certified school psychologist; (5) Karen T. Kimberlin, M.S., CCC-SLP, an expert in speech and language, and reading and writing; and (6) the student's mother, A.S.

that the SINAI School was appropriate, and that the Petitioners (now Defendants) were entitled to "reimbursement for their unilateral out-of-district placement of Z.S. at SINAI," including transportation, as well as fees and costs.[6]

Edison filed its Complaint in this Court to appeal the ALJ's decision on January 5, 2017. Defendants failed to timely respond to the Complaint and default was entered on March 15, 2017. Without vacating the default, Defendants filed an answer on March 17, 2017.

On May 5, 2017, the New Jersey Office of Special Education Policy and Procedure ("OSEPP") wrote to Edison's counsel requesting documentation, by May 19, 2017, showing that Edison had reimbursed the parents for SINAI School tuition "at 75% of daily rate as set forth" in the ALJ's decision.

On May 25, 2017, Edison filed the present motion seeking to stay "any enforcement of Judge Antoniewicz's Order that requires reimbursement to the parents of SINAI tuition and transportation, as well as fees and costs."

 Edison sought a stay of enforcement from OSEPP and, in response, received a letter dated October 12, 2017, from OSEPP directing Edison Township's Superintendent "to place $143,349.76 . . . into the escrow account of your board attorney," and "confirm transfer of the funds by October 27, 2017." OSEPP's letter further states that "if no stay has been obtained by December 15, 2017 . . . your attorney will provide the escrowed funds to petitioner's attorney for distribution to his client in satisfaction of the directive in

---

[6] The ALJ issued an amended opinion correcting certain errors on December 2, 2016.

the [ALJ's decision]."

On October 16, 2017, Edison requested that "this Court render a decision immediately in regard to the Motion for Stay of Order Pending Appeal," claiming that such decision "is necessary for the parties to more expediently resolve the issue of whether funds for reimbursement of tuition and transportation must be paid to the parents while this appeal is pending."

### **Legal Standard**

**A.**    **Motion to Stay**

The standard for determining whether to stay an IDEA administrative decision is essentially the same as that applied to an application for a preliminary injunction. *See Boro. of Palmyra Board of Ed. v. Hurley*, 2 F. Supp. 2d 637, 641 (D.N.J. 1998). Courts consider the following four factors: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). Injunctive relief is "an extraordinary remedy and should be granted only in limited circumstances." *Id.* (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1994)). The Third Circuit has held that the first two factors—likelihood of success and irreparable harm—are the two most important in the analysis. *See, e.g.*, *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). The party requesting the stay bears the burden of showing a stay is warranted. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B.**    **Individuals with Disabilities Act (IDEA)**

The IDEA is a "comprehensive scheme of federal legislation designed to meet the

special educational needs of children with disabilities" and it provides federal funds to

assist states "in providing educational services to children with disabilities," subject to the

condition "that states meet a number of substantive and procedural criteria." *M.A. ex rel.*

*E.S. v. State Operated Sch. Dist.*, 344 F.3d 335, 338 & n.4 (3d Cir. 2003). "Two

important concepts with the IDEA are 'free appropriate public education' (FAPE) and

'individualized education program' (IEP). The IDEA provides for reimbursement and

compensatory education [and] sets a process for relief." *Millburn Twp. Sch. Dist. v. M.P.*,

2016 WL 311260, at *4 (D.N.J. Jan. 26, 2016).

According to the Supreme Court, "a FAPE consists of 'educational instruction

specifically designed to meet the unique needs of the handicapped child, supported by

such services as are necessary to permit the child to benefit from the instruction.'" *Id.*

(quoting *Bd. of Educ. of Hendrick Hudson Cent., Sch. Dist. Westchester Cty. v. Rowley*,

458 U.S. 176, 188-89 (1982)). FAPE must confer more than a trivial or *de*

*minimis* educational benefit. *Id.*

"Provision of a FAPE starts with an [IEP], which is a comprehensive statement of

the educational needs of a handicapped child and the specially designed instruction and

related services to be employed to meet those needs." *Sch. Comm. Of Burlington v. Dep't*

*of Educ. of Mass.*, 471 U.S. 359, 368 (1985); *see also D.S. v. Bayonne Bd. of Educ.*, 602

F.3d 553, 557 (3d Cir. 2010) (The "centerpiece of the IDEA is the [IEP]."). "The IDEA

does not set forth definitive guidelines for the formulation of an IEP, but at a minimum,

6

the IEP must be 'reasonably calculated' to enable the child to receive 'meaningful educational benefits' in light of the student's intellectual potential." *Ferren C. v. School Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010). In general, "[s]chool districts work with parents to design the IEP, which 'must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services the school will provide.'" *Millburn Twp. Sch. Dist.*, 2016 WL 311260, at *4 (quoting *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 269 (3d Cir. 2012)). The issue of whether an IEP is appropriate for a child is a question of fact. *See S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 271 (3d Cir. 2003).

If a school district fails to provide a FAPE, parents may place their child in a private school and seek tuition reimbursement from the school district. *Sch. Comm of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985). To be "eligible for reimbursement, a district must have failed to provide a FAPE, and the placement must be proper. A private placement is 'proper' if it (1) is 'appropriate,' i.e., it provides 'significant learning' and confers 'meaningful benefit,' and (2) is provided in the least restrictive educational environment." *Millburn Twp.*, 2016 WL 311260, at *4 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 276 (3d Cir. 2007)).

"When a party objects to the adequacy of the education provided, the construction of the IEP, or some other related matter, IDEA provides procedural recourse: [i]t requires that a State provide 'an opportunity for any part to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a FAPE to such child.'" *Winkelman ex rel Winkelman v. Parma City*

*Sch. Dist.*, 550 U.S. 516, 525 (2007) (quoting 20 U.S.C. § 1415(b)(6)). "In practice, this takes the form of an administrative proceeding centered around an 'impartial due process' hearing, 20 U.S.C. § 1415(f)(1), after which 'the IDEA permits an aggrieved party to bring a civil action in any court.'" *Millburn Twp.*, 2016 WL 311260, at *4 (quoting *S.H. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir. 2013) (citing 20 U.S.C. § 1415(i)(2)(A))).

## Analysis

### A.    Likelihood of Success on the Merits

A "modified *de novo*" standard of review applies to reviews of administrative hearings under the IDEA. *See S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Fact finding from administrative proceedings are considered *prima facie* correct. *See C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010). If the reviewing court chooses not to accept the administrative findings of fact, then it must provide some explanation for its finding. *See S.H.*, 336 F.3d at 269.

Edison must show that it is likely to succeed on the merits of the case, that is, that the Court will conclude that Edison provided a FAPE to Z.S. during the school years at issue. Edison seeks to meet this burden by arguing the following.

First, that the ALJ's decision "arbitrarily discredited the testimony of the District's witnesses that testified to Z.S.'s progress in the District program and the appropriateness of the IEPs, without providing any justification for doing so." (Pl.'s Br. 20.)

Second, the ALJ did not appreciate that "Z.S. progressed in the least restrictive environment per the IEPs offered by the District, compared to Z.S.'s failure to progress in

the more restrictive environment at SINAI, demonstrating that the District provided a FAPE to Z.S." (*Id*.)

Third, the "District was denied its right to due process in the administrative proceedings below," due to the ALJ's alleged "bias" in favor of the parents and their counsel in various ways, including denying a request for sanctions; allegedly speaking alone with the parents' attorney; permitting the parents' attorneys to continue the cross-examination of witnesses during the administrative hearings over Edison's objections; "discrediting Edison's evidence"; and issuing a final decision that contained typographical errors that "conflated" this case with another matter "involving the same attorney, private placement in the same school-SINAI, and some of the same experts." (*Id.* at 24-26.)

Finally, that the ALJ ruled on school years that were not properly in front of him and directed the reimbursement of tuition for the placement of a child at a religious school, which Edison contends violates the United States Constitution. (*Id.* at 27-28.)

In response, Defendants detail various aspects of the testimony before the ALJ—including from Edison's own witnesses—that explained how the IEP's were deficient in many areas, including missing information and being based on evaluations that were performed when Z.S. was in preschool. (Pl.'s Br. 26.) Defendants further contend that the ALJ heard the conflicting evidence and simply concluded that their experts "conducted far more thorough analyses of Z.S.'s records and concluded that he did not receive a FAPE." (*Id*. at 27.) In other words, Defendants argue that the ALJ properly did his job—i.e., he received the evidence, assessed credibility, and made factual

findings—and that Edison is simply dissatisfied with the result.  (*Id.*)  Defendants further

contend that placement at SINAI was appropriate, there is no prohibition on placement in

a religious school, and that claims of judicial bias are meritless and trivial, and simply

"desperation to find something with which to support it's request for a stay." (*Id.* at 29.)

The Court has a limited record and is not deciding the case on the merits.  From

what has been presented, Edison has not shown a sufficient likelihood that it will prevail

on the merits of the case such that it should obtain the "extraordinary remedy" of

injunctive relief.  The ALJ's decision is 48 pages and followed 8 days of hearings.  It

includes a detailed summary of every witnesses' testimony.  Most important, the lengthy

opinion makes express credibility determinations, as well as fact findings (which must be

considered *prima facie* correct) and conclusions based on the evidence.  For example,

after hearing testimony from 8 witnesses, the ALJ found, among other things that:

- "There was substantial evidence submitted to this venue, including the testimony from many witnesses and tangible documentary evidence.  This evidence supports the fact that Z.S. did not show progress in the Fifth grade and that the IEPs the Edison Board of Education presented for the sixth and seventh grades were not reasonably calculated to provide Z.S. with a meaningful, individualized education.   (ALJ Decision at 33)[3];

- "Petitioners showed during the hearing that even though Z.S. moved forward from grade to grade, this does not show that a FAPE was provided to this student.  In addition, although the respondent points to the STAR testing for allegedly showing progress by Z.S., the evidence is clear from both the respondent's and petitioners' witnesses that the STAR tests were not a measure of progress . . . ." (*Id.*);

---

[3] Citation is to the ALJ's amended final decision at ECF 1-4.

- "The IEPs developed for Z.S. are also tragically void of any reference to his poor attendance record.  The District was well aware of this student's excessive tardiness and absences, yet the IEPs make absolutely no mention of how to address the problems which clearly led to this result."  (*Id.* at 34);

- "The IEPs at issue in this case did not state and were not based on Z.S.'s present, individual needs and abilities." (*Id.* at 35);

- "The sixth and seventh grades IEPs do not provide the proper mechanisms to objectively measure Z.S.'s educational progress.  The IEP lack grade levels which measure whether Z.S. has been making meaningful progress. . . . [A]s correctly pointed out by the petitioners, the respondent relied on only one educational evaluation it created when Z.S. was at a very young age and never updated this evaluation as the student became older."  (*Id.* at 35);

- "In this case, the District blatantly failed to measure and considers [sic] Z.S.'s present and evolving needs and develops a unique, tailored plan to meet and measure those needs.  This position was reinforced by Katz who testified that Edison failed to provide a FAPE to Z.S.  The District failed to present any expert testimony to the contrary.

    I find that the IEPs were not properly drafted or offered to A.S. for Z.A. for the schools years when Z.S. was in the fifth, sixth, and seventh grades.  In fact, the District relied on an out of date evaluation and ignored medical documents and evaluations which were provided to the District by A.S. which referenced a more accurate diagnosis.  It follows that FAPE was not provided for Z.S."  (*Id.* at 37.)

For purposes of this limited motion, Edison has not shown any compelling reason to find that the ALJ's determinations, which include credibility findings, are erroneous. The same is true for Edison's arguments regarding whether SINAI was a proper placement, which the ALJ also expressly considered and rejected.  (*See id.* at 38-41.) Finally, Edison's arguments regarding procedural irregularities and bias, which include disagreements on rulings and claims of favoritism, are well short of establishing a basis for the entry of an injunction.  It is certainly possible that the District may ultimately

prevail on a more developed record.  However, at this stage of the proceedings, the record

does not support a finding that Edison is likely to prevail on the merits.  This factor

weighs against a stay.

**B.    <u>Irreparable Harm</u>**

Edison claims that it will suffer irreparable harm because it has "limited funds,"

and is "likely have difficulty recovering any payment made to the parents if this Court

should reverse its decision," and that "such action may entice other parents to bring

claims and obtain an unjustified windfall."  Edison speculates that if payments are made

to Defendants now they "will undoubtedly be difficult to recover."  (Pl.'s Br. 28-29.)

Edison's claim of irreparable harm is the payment of money.  According to the

ALJ's decision, that money should have been paid years ago.  More important, "an injury

measured in solely monetary terms cannot constitute irreparable harm."  *Liberty Lincoln-*

*Mercury v. Ford*, 562 F.3d 553, 557 (3d Cir. 2008) (emphasis added).  Indeed,

"[i]rreparable harm must be of a <u>peculiar</u> nature, so that compensation in money alone

cannot atone for it."  *Kos Pharm.*, 369 F.3d at 727 (emphasis added); *see also Sampson v.*

*Murray*, 415 U.S. 61, 90 (1974) *(*"The key word in this consideration is *irreparable*.

Mere injuries, however substantial, in terms of money, time and energy expended in the

absence of a stay are not enough." (emphasis in original)).  For that reason, the Third

Circuit has stated:

> We have <u>never</u> upheld an injunction where the
> claimed injury constituted a loss of money or a
> loss capable of recoupment in a proper action at
> law.

*In Re Arthur Teacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) (emphasis added); *see also Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) ("As a general matter, a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement."); *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994) ("Economic loss does not constitute irreparable harm."); *Campbell Soup Co. v. Con Agra, Inc.,* 977 F.2d 86, 92 (3d Cir. 1991) (An "injury or harm must be irreparable . . . so that compensation in money cannot atone for it[.]"); *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate money damages belies a claim of irreparable injury."); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury"); *see also Boro. of Palmyra Board of Ed. v. Hurley*, 2 F. Supp. 2d 637, 644 (D.N.J. 1998) (rejecting School Board's request for an injunction deferring payment of ALJ ordered reimbursement in an IDEA case).[4]

---

[4] Edison relies on certain district-level case law that has found irreparable harm present in the IDEA context because there is no direct mechanism under the statue that enables the District to re-coup money paid to the parents if the District later wins the case. *See, e.g.*, *D.C. v. Masucci*, 13 F. Supp. 3d 33, 41 (D.D.C. 2014).   However, there is no obvious basis to reconcile that authority with the Third Circuit's stalwart conclusion that money damages are generally not sufficient to obtain an injunction. Nor does it account for contrary precedent.  *See, e.g.*, *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 86-87 (3d Cir. 1996) ("While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, *the school district's financial responsibility should begin when there is an administrative <u>or</u> judicial decision vindicating the parents' position*.  The purpose of the Act, which is to ensure that every child receive a free and appropriate education is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education." (emphases added)).
    Edison contends that *Susquentia* is distinguishable because of, among other

Putting that wall of authority aside, there is nothing in the record that suggests that Defendants are unwilling to reimburse the money if Edison goes on to win the case. And it is purely speculative to claim that they will be unable to do so. There are many avenues to recover funds, and it occurs frequently when, for example, a party seeks to collect on a judgment. It is understandable why Edison would want to retain the money and avoid attempting to collect later. But that is not *irreparable* harm. *See, e.g.*, *Boro. of Palmyra*, 2 F. Supp. 2d at 644. And even if speculation about the difficulty of recovering funds could be said to constitute irreparable harm, the injunction should still be denied for the reasons detailed elsewhere in this Report. *See, e.g.*, *Millburn Twshp.*, 2016 WL 311260 at *5 (denying motion to stay in IDEA case, despite finding irreparable harm, on substantially similar facts).[5]

## C.    Harm to the Non-Moving Party

Defendants contend that they have already been burdened in this case with having to expend "thousands of dollars" attempting to provide their son with a proper education, which should have been provided by Edison and was not for multiple school years. In

---

reasons, its belief that it will prevail on the merits (which has not been found here) and because it has assumed financial responsibility for Z.S. current placement at Collier School. (Pl.'s Br. 31-32.) These arguments do not alter the findings of the Third Circuit in *Susquenita*.

[5] Edison's argument that other parents may be enticed "to bring claims and obtain an unjustified windfall," lacks merit. For one thing, each individual student and their IEP is a separate inquiry. Two, the alleged harm is entirely speculative and remote and fails as a matter of law. *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) ("[M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a "clear showing of immediate irreparable injury," or a "presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury...").

addition, Defendants state that Z.S. was forced to leave SINAI because his parents "have exhausted their financial ability to pay tuition," and recently had to "borrow money" to pay SINAI.  (Defs.' Br. 31.)  Defendants contend that Edison should not be permitted to fail to provide FAPE, and at the same time delay compensation that is owed as a result. (Defs.' Br. 32-33.)

Edison contends that a "delay in receiving the funds for reimbursement as well as costs and fees would likely cause *de minimis* harm to the parents, who have already paid the tuition."  (Pl.'s Br. 30.)

This factor weighs against a stay.  The Court has no reason to question the parents' representation that paying tuition has caused a financial strain.

**D.    The Public Interest**

Edison contends a stay is in the public interest because the case involves the payment of funds to a religious school; because a stay will "simplify the issues" on appeal; and because the case is in the early stages and there is no trial date.  (Pl.'s Br. 34-25.)  In response, Defendants contends that payment of funds for placement in religious school is permissible and that Edison has completely failed to explain how a stay would simplify the issues in this case.

This factor also weighs against a stay.  Edison has a burden to show why a stay is warranted, and nothing persuasive has been shown as to how the public interest would benefit from a stay of this case.  For one thing, it is unexplained how a stay would simplify the issues.  For another, reimbursement of funds here is to the *parents*, not a religious school, and, in all events, the sectarian nature of an appropriate school does not

preclude reimbursement. *See, e.g.*, *L.M. v. Evesham Twp. Bd. of Educ.*, 256 F. Supp. 2d 290 (D.N.J. 2003) (ordering reimbursement of funds for placement in religious school). Finally, Defendants note that Edison has settled a number of other cases by "agreeing to pay tuition at SINAI for students who have claimed that Edison deprived them of a FAPE." (Defs.' Br. 34.)

### CONCLUSION

Considering all of the relevant factors, Plaintiff has failed to carry its burden to show that a stay of the ALJ's decision is appropriate in this case. For that reason, it is respectfully recommended that Plaintiff's motion be **DENIED**.


**s/Mark Falk**
**MARK FALK**
**United States Magistrate Judge**


**DATED: October 27, 2017**